## Case No. 5,778.

### GREENLEAF et al. v. GOODRICH.

[1 Hask. 586; [1] 21 Int. Rev. Rec. 324.]

Circuit Court, D. Massachusetts. Sept., 1875. [2]

CUSTOMS DUTIES—ACTIONS TO RECOVER PAYMENTS—SIMILAR DESCRIPTION—EXPERT TESTIMONY.

1. In a suit to recover back duties paid upon certain goods as of "similar description" levied under the act of 1862 [12 Stat. 553], laying the duty upon all delaines and goods of "similar description," it is for the jury to say as a fact whether the goods upon which the duty was laid were of similar description as delaines. [See note at end of case.]

2. The words "similar description" are to be understood in their popular and generally received meaning; goods similar in product and adapted to similar uses, and not necessarily produced by similar processes or methods of manufacture. [See note at end of case.]

3. An expert called to testify as to the process of manufacture, quality and similarity of certain fabrics from inspection of them, may be shown other samples of like fabrics by the adverse party, and asked his opinion as to the kind of goods they are, and how they were manufactured, and his opinion may be contradicted by such party to impair his testimony as an expert.

Contract, to recover money paid to the collector of the port of Boston under protest, as duties laid upon certain dress goods under the act of 1862, as being goods "of similar description" to delaines. The cause was tried upon the general issue; the verdict was

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

[2] [Affirmed in 101 U. S. 278.]

for the defendant [John Z. Goodrich], and the plaintiffs [Richard C. Greenleaf and others] moved for a new trial for misdirection, and because the verdict was against evidence.

Charles L. Woodbury, Francis W. Heard, and J. P. Tucker, for plaintiffs.

Geo. P. Sanger, Dist. Atty., and P. Cummings, Asst. Dist. Atty., for defendant.

Before SHEPLEY, Circuit Judge, and FOX, District Judge.

FOX, District Judge. The plaintiffs, importers of dry goods, doing business in this city under the style of Hovey & Co., brought their action against the defendant, formerly the collector of customs at this port, to recover back an amount alleged to have been illegally exacted of them by him, as duties on sundry importations of cloths, in the year 1862-3, commonly known as Saxony dress goods. It was not questioned by either party, that under the acts of 1861, the plaintiffs' goods would have been subject to a duty of thirty per cent. ad valorem; but the question arising in the present cause is, whether under the act of 1862, providing for additional duties, these goods were subject to an additional duty of two cents per square yard, they not exceeding forty cents per square yard in value, or whether they came within another clause of the act of 1862 (12 Stat. 553), which subjected the class of goods therein mentioned as subject to an additional charge of five per cent. ad valorem.

The clause found in the act of 1862, under which the two cents per square yard was claimed, is as follows; "on all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, and on all goods of similar description, not exceeding in value forty cents per square yard, two cents per square yard." By another clause in the same act, all other manufactures of worsted, or of which worsted shall be a component material, not otherwise provided for, are subject to an additional duty of five per cent. ad valorem. The plaintiffs' goods were of cotton warp and a worsted filling, which was dyed or colored before weaving, and it was claimed that they were not of a similar description to the delaine fabrics, which were always woven without color, or in the grey, as it is generally termed, and so they were not liable to the higher rate of two cents per square yard.

The principal ground taken by the counsel for the plaintiff in their learned argument for a new trial is, that under the instructions given to the jury, the construction of the statute was left to the jury; that it was the duty of the court to have defined the language of the act, and that the jury should have been directed to apply the definitions so given to the facts as they might find them established by the evidence. The instructions which were given to the jury are found set forth in the report of the charge as taken by the shorthand reporter, and an examination of the charge does not satisfy us, that it is fairly subject to this objection.

The charge states "that as the court understands the testimony, there were in 1862 two descriptions of delaines; one made entirely from wool or worsted, and it was not claimed, that the goods of the plaintiff were of that description; the other was of cotton warp and worsted filling, known in commerce by various names, some of which as cashmere, barege, &c., are found in the statute. These goods were invariably woven of undyed yarn, or in the grey; were for the most part dyed or printed, and sold as dress goods for ladies' wear. It would seem from the evidence that they varied somewhat in texture, in coarseness or fineness of the worsted, and sometimes, as some of the witnesses state, were twilled or woven in figures; sometimes the warp had more or less heavy threads or cords running through it for making reps, but the filling, it is said, was never in color when woven. Here is found, if I am correct in my view of the evidence of which the jury will judge, a class of dress goods of cotton warp and worsted filling, without color of any kind when woven, but the color was subsequently applied, and these were the delaines referred to in the act as the court understands it." This portion of the charge certainly must have conveyed to the jury, what in the opinion of the court were the fabrics referred to in the act as delaines, and of a similar description to which must be any other goods, upon which the additional duty of two cents per square yard could be exacted.

The jury were also instructed, that the words "of a similar description" were to be taken and understood, in their popular and received import, as generally understood in the community at large, at the time of the passage of the act. These words are manifestly not words of art; they are not novel or obscure, and there is nothing peculiar or exclusive in their signification, so that it would be proper to explain or elucidate them by reference to the business of manufacturing or vending of delaines; the language is plain and familiar to every one, and requires no evidence to explain its import, and as stated by Mr. Justice Daniel, in Maillard v. Lawrence, 16 How. [57 U. S.] 261, "The popular or received import of words furnishes the general law for the interpretation of public laws, as well as of private and social transactions; and whenever the legislature adopts such language in order to define and promulge their action or their will, the just conclusion from such a course must be, that they not only themselves comprehended the meaning of the language they have selected, but have chosen it with reference to the known apprehension of those to whom the legislative language is addressed, and for whom it

was designed to constitute a rule of conduct, namely, the community at large." The objection, therefore, that the jury were instructed to take these words in their popular import, without evidence as to what the import might be, is not maintainable, as evidence was not necessary or properly admissible upon a matter so clearly within the general knowledge and understanding of the jury.

The jury were also instructed that the similarity referred to in the statute by the expression, "goods of similar description," is a similarity in respect to the product and its adaptation to uses, and to its uses and not to the process by which it was produced. The plaintiff requested that the jury should be instructed, "that if they believe that the plaintiffs' goods were not woven in the grey or natural color of the worsted and cotton, but were woven with colored warps or filling, then their verdict must be for the plaintiff." This instruction was refused, and as we think properly, as the effect would have been to restrict the consideration of the jury to the process of manufacture, and to have withdrawn from their consideration the true question, which was similarity of fabric. In our opinion, this was the real question for the jury to determine, and the judge at nisi prius would not have been justified in withholding from the consideration of the jury all the other evidence in the case bearing on the similarity, or difference between the delaines called for by the act, and the goods upon which the duties were exacted of the plaintiff. The instruction that the similarity required by the act must be found in the resultant fabric, and not solely in the process of its manufacture, was a correct exposition of the meaning and effect of the words, "goods of a similar description," and all that the court could be well called upon to present for the consideration of the jury. The very words of the act are the clearest and most manifest evidence of the meaning and intent of congress. It no where declares that the similarity shall be in the method by which the goods are woven or dyed, but it does require that in the goods themselves, the similarity shall exist.

The charge of the judge presented to the jury with some detail, the various points of similarity and difference as developed in the testimony, and concluded by instructing them, that it was for the jury to determine whether or not the goods upon which the duties were exacted were goods of a similar description with the delaines enumerated in the act, and that all of the testimony that had any bearing upon that question, the goods themselves, the manner in which they were woven and dyed, the result of the dyeing, and every other fact and circumstance, were to be taken into consideration and allowed their proper effect, in coming to a conclusion in regard to the similarity or dissimilarity of the two fabrics. These instructions submit-

ted to the jury the real issue in the case, which had become almost entirely a matter of fact, which the jury was the proper tribunal to pass upon; any other direction would have encroached on the province of the jury, and would therefore have been objectionable.

These instructions are sustained by the opinion of the supreme court of the United States in Barney v. Schmeider, 9 Wall. [76 U. S.] 252, which was an action similar to the present, to recover back the excess of duties imposed by the collector of New York, under this statute of 1862, on goods similar to plaintiffs'. In that case the learned judge says, "The point in dispute was whether the goods of plaintiff, on which the two cents per yard had been assessed, were goods of a similar description to those above mentioned, within the meaning of the act. Now it is clear that this question alone is one of mixed law and fact, because until we are informed by testimony as to the nature and character of plaintiffs' goods, no construction or view of the law can be applied to them. The court can only know by evidence what kind of goods were assessed by the collector, and this at once dispels the idea that the case could in any sense present an abstract question of law." From the report and record of that cause it would seem that the judge at the trial, because the goods of the plaintiff were woven in colors, ruled as a matter of law that such goods were not similar to the delaine fabrics, and the plaintiff obtained a verdict which was not sustained by the supreme court. In the present case an entirely different course was adopted, and the jury were instructed as to what the evidence showed the delaine fabrics mentioned in the act to be, and further in what respect the similarity must exist in, that the fabric itself and the uses for which it could be employed must be similar to the goods previously described in the act. The court thus gave a legal construction and signification to the language of the statute, leaving it to the jury to make the application of the facts and determine whether by the facts it appeared that the goods of the plaintiff were fabrics, so far similar to the delaine fabrics as to subject them to the same rate of duty.

Exception is also taken to the admission of the testimony of Webster respecting certain samples of goods. Mr. Dalton was called by the plaintiff as an expert, to state as to the process of manufacture of delaines and other fabrics, and whether certain samples presented to him were delaines or similar goods. For the purpose of testing his skill and knowledge as an expert, the defendant exhibited to him certain other samples, and he was inquired of in relation to them, what kind of goods they were, &c. Having given his opinion in respect to them, Mr. Webster was called and allowed to contradict the opinions of Mr. Dalton, and to state the facts as to these samples shown to Dalton by de-

fendant's counsel, what they in truth were, and of what material, &c. This evidence was clearly admissible, as bearing upon the qualifications of Mr. Dalton as an expert, and this was the sole reason and purpose for which it was received at the trial.

There being a great mass of evidence before the jury bearing upon the question of whether or not the plaintiffs' goods were similar to delaines, all of which was very ably and fully presented to the jury by the respective counsel, the court does not feel justified in setting the verdict aside as contrary to the weight of the evidence; it was a matter more clearly within the province of the jury, with much evidence on each side, and the plaintiffs must abide the result. Motion overruled. Judgment on the verdict.

[NOTE. The plaintiffs then appealed to the supreme court, where the judgment was affirmed in an opinion by Mr. Justice Strong, who said that the court's instruction with reference to the act of 1862 was proper, and that the phrase. "of similar description," is not a commercial term; the tariff acts do not contemplate that goods classed under it shall be in all respects the same. 101 U. S. 278.]